UNITED STATES *v.* AMERIS TRADING Co. (No. 4761)[1]

United States Court of Customs and Patent Appeals, November 2, 1953

*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh*, special attorney, of counsel), for the United States.

*Sharretts, Paley & Carter* (*Joseph F. Donohue* and *Howard C. Carter* of counsel) for appellee.

[Oral argument October 7, 1953, by Mr. Welsh and Mr. Donohue]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs

[1] C. A. D. 542.

Court, Second Division, rendered pursuant to its decision, C. D. 1463, sustaining the importer's protest, one judge dissenting, with respect to the classification of certain devices described on the importer's invoice as "Hosiery mending machines for stockings." The goods were classified by the Collector of Customs at the port of New York as knitting machines dutiable at 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as modified by the trade agreement between the United States and Switzerland, 69 Treas. Dec. 74, T. D. 48093.

The importer claimed the devices are not knitting machines and, therefore, should be classified as machines, not specially provided for, dutiable at 15 per centum ad valorem pursuant to said paragraph 372, as modified by the General Trade Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802; or, in the alternative, as articles having as an essential feature an electrical element or device, dutiable at 15 per centum ad valorem, pursuant to paragraph 353, as modified by said general agreement.

The involved statutory provisions, so far as applicable, are reproduced herewith:

Paragraph 372, Tariff Act of 1930, as modified by the Swiss Trade Agreement, reads:

> Knitting machines * * * finished or unfinished, and not specially provided for . . . 27½% ad val.

Paragraph 372 of said act, as modified by the General Agreement on Tariffs and Trade, reads:

> Machines, finished or unfinished, not specially provided for:
> *          *          *          *          *
> Other * * * . . . . . . . . . . . . . . . . . . 15% ad val.

Paragraph 353 of said act, as modified by the General Agreement on Tariffs and Trade, reads:

> Articles * * * having as an essential feature an electrical element or device * * *
> *.          *          *          *          *
> Other articles * * * . . . . . . . . . . . . . . . 15% ad val.

Appellee, the importer, at the trial of the case introduced the testimony of two witnesses, supplemented by four Exhibits 1–4. The Government called one witness whose testimony was supplemented by Exhibit A. Importer's Exhibit 1 is one of the mending machines in question, which sells abroad for $43 to distributors. This machine was later withdrawn from evidence and a photograph thereof, Exhibit 2, substituted. Exhibit 3 is the needle used in the mending machine, and Exhibit 4 is a typical needle used in a knitting machine.

The respective needles have a hook on the end, but the hook on the end of the needle used in a knitting machine, Exhibit 4, "is quite a bit

longer" than the hook on the end of the needle, Exhibit 3, used in a mending machine. Exhibit A, introduced by the Government, is an advertising folder containing an illustration of a mending machine, typical of the machines in issue, together with descriptive literature designed to promote the sale of the device.

The record discloses that the mending machines are powered by a built-in electrical motor and are used primarily as auxiliary equipment in hosiery mills to repair the "percentage" of runs [1] which occur there in the manufacture of women's nylon stockings on knitting machines.[2] The runs render the finished product unsalable until repaired by the mending machine. The mending machines are used to some extent in dye house and dry-cleaning establishments to repair runs in hosiery at a charge of 25¢.

The majority in the Customs Court stated the issue, commented upon the evidence, quoted certain dictionary definitions, and held the involved device was not a knitting machine and that the importer's alternative claim regarding an electrical device, supra, was well taken. Judge Rao in his dissenting opinion and following the same procedure quoted additional dictionary definitions and other authorities, and came to the conclusion, since no question of commercial designation was involved, that "what little affirmative evidence was adduced" from the witnesses established that the involved mending machines were, in fact, knitting machines, and, accordingly, the classification of the collector should be sustained.

There is a presumption of law that the Collector of Customs has considered the pertinent facts regarding the merchandise at bar and hence it is necessary for the importer to prove, prima facie, not only that the classification made by the collector was erroneous, but also that its own contention is correct. *Loewenthal Trimming Corp.* v. *United States*, 39 C. C. P. A. (Customs) 149, 153, C. A. D. 477; *Leonard Levin Co.* v. *United States*, 27 C. C. P. A. (Customs) 101, C. A. D. 69.

On appeal opposing counsel agreed that the definitions set forth in both of the opinions of the Customs Court are accurate, and should our court hold that the device in issue is not a knitting machine, it is otherwise an article having as an essential feature an electrical element or device properly classifiable as such in accordance with the conclusion expressed by the majority.

The record unquestionably establishes that to knit is to form a textile fabric by the interlacing or latching of a single yarn or thread in a series of connected loops by means of hooked needles operated either by hand or by machinery, as, for example, in the knitting of

---

[1] Webster's Collegiate Dictionary, Fifth Edition, contains this definition: "run * * * A lengthwise ravel in a knitted fabric, as in silk hose."

[2] The Government's Exhibit A alleges that 400 million repairs of runs are made annually by such mending machines.

154

stockings; and that knitting machines may be large and employ 10,000 needles, or may be small and employ but a single needle.

Mr. Carter, of counsel for the importer, called Samuel Fadem, who in response to inquiries testified in part as follows:

By Mr. CARTER:

Q. How long have you been familiar with merchandise like Exhibit 1? A. About 2 or 3 years.

Q. Have you seen Exhibit 1 [the imported mending machine] in operation? A. Yes.

Q. What function does it perform? What does it do? A. It repairs stockings; it mends stockings.

Q. What kind of stockings does Exhibit 1 mend? A. Only the women's, the nylons.

Q. Will you please describe how Exhibit 1 operates? A. We put here a stocking with a hole on the top, then this is the needle. You press the pedal in an electric outlet.

Judge LAWRENCE: The machine operates electrically, then?

Mr. CARTER: It does. I have a witness who will testify in greater detail about the operation.

By Mr. CARTER:

Q. The electric motor causes the device to turn internally? A. Yes.

Q. And, it operates an air compressor? A. And, the air goes through the pipe here, through the needle.

Q. What does the needle do? A. This picks up the two loops; it repairs the two pieces together.

Judge RAO: The thread or what?

The WITNESS: This picks up one thread and it repairs the two pieces.

Judge RAO: You mean it gets them together; the various threads of the stockings that have been separated like a sewing machine sews the two pieces together? How does it sew them, by getting both threads together or with an additional thread?

The WITNESS: No, both together.

Counsel for the Government, Mr. Welsh, called Arthur de St. Maurice, distributor since 1932 of hosiery-mending machines which operate substantially the same as the device in issue and are subject to the higher rate of duty should the claims in the present importer's protest be sustained. In response to certain questions put to him by Mr. Welsh, Mr. Carter, and members of the court, Mr. St. Maurice frankly stated:

Direct Examination by Mr. WELSH:

Q. Now, Mr. St. Maurice, I show you hose support, which is marked "X" on Illustrative Exhibit 2. You place the stocking over Illustrative Exhibit 2, is that right? A. That's right.

Q. And, then you use the needle? A. Yes.

Q. Now, will you explain what that needle does to the threads? A. Well, you place on the center of this cup, on this hosiery part, you start in the center and you move the fabric over the hosiery part while the needle is proceeding and looping.

Q. Does it loop the thread?   A. Yes.

Q. It takes one and loops it over the other?   A. One has the appearance of a ladder and with the needle, you take the last loop, the needle through the closing of the latch closes that loop inside of the hook of the needle and cross-threads that you had on the top of the needle, jumps over the one which is enclosed in the hook and makes a new loop and this is the process all along the line.

Q. So that, it loops one over the other?   A. Yes.

Q. Is that a knitting operation?   A. I don't know.

Q. Do you call it a knitting operation?   A. Yes, we do.

Q. How long have you been calling it a knitting operation?   A. Ever since the machine, since 1932.

Q. Do you so describe it in your literature?   A. I really don't know.

Mr. WELSH. Will you mark this Defendant's Exhibit A for Identification?
Judge LAWRENCE: Let it be marked.

(The catalogue referred to was marked Defendant's Exhibit A for Identification in Protest Number 172736–K, as of this date.)

\*                          \*                          \*

Q. Now, having read that, what do you call your machine?   How does it operate?   A. It reloops the cross thread on a run.   The contention is exactly what the word knit means. \* \* \*

\*                          \*                          \*

Q. What is a knitting machine?   A. According to me, a knitting machine does—is one that uses a thread in order to make some kind of a product.

Q. How does it use the thread?   A. By meeting loops.

Q. Does it [the mending machine] make loops?   A. Yes, but it does not use any thread.

Q. It does not use any additional thread, but it uses one that is already present in the fabric and loops them?   A. That's right.

Judge RAO: Doesn't a knitting machine use threads to knit something together?

The WITNESS: No. The thread is supplied from outside of the machine and fed to the machine.

Judge RAO: But, you don't do that with the machine in question, do you?

The WITNESS: No, the thread is already on [in] the fabric.

Judge LAWRENCE; In other words, a knitting machine uses thread or yarn to fabricate another article?

The WITNESS: That's right.

Judge FORD: Is there any reason why you designate this as a knitting machine?

The WITNESS: The only reason is that it knits.

Judge FORD: Is that your opinion or the opinion of the men in the trade?

The WITNESS: No, it is the general opinion, I would say, with the provision that it doesn't use any new thread.

By Mr. WELSH:

Q. But, it does knit?   A. Yes according to me, or reloop or relatch.

Cross Examination by Mr. CARTER:

XQ. Mr. St. Maurice, does Exhibit 1 create anything from yarn or thread? A. No.

XQ. From new yarn or thread?   A. No.

XQ. Is Exhibit 1 used after the stocking itself has been completely knitted? A. Yes.

XQ. Is it used in a different section of the factory from where the knitting machines are? A. Yes.

XQ. It is not a step in the process of knitting a stocking, is it? A. No.

Mr. CARTER: That is all.

The majority in rendering its decision relied upon and sustained the following primary contention of the importer:

It is the contention of plaintiff, based upon the record evidence, that the machines in controversy are readily distinguishable from knitting machines, it being pointed out that they do not create an article from yarn or thread and, therefore, have none of the characteristics of a knitting machine as known in the industry—their sole purpose being to mend or repair breaks or runs in stockings.

We are unable after a careful scrutiny of the record before us to agree with the conclusion thus expressed by the majority in this case. On the contrary, we find in the record unconflicting evidence that in the manufacture of women's stockings on a knitting machine a certain percentage of the finished product is defective and unmarketable as such without further service on the involved mending machine. The nature of that service is a knitting operation as properly noted in the opinion of Judge Rao whose reasoning is adopted here as controlling of the issues presented and as requiring reversal of the judgment from which the appeal was taken.

The judgment of the United States Customs Court is accordingly *reversed.*